814 F.2d 655
 55 USLW 2628, 8 Employee Benefits Ca 1674
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Pension Benefit Guaranty Corporation, Appellant,
v.
DORSEY CORPORATION; Chattanooga GLass Company; Glass
Bottle Blowers Association of the United States
and Canada AFL-CIO; American Flint
Glass Workers Union, AFL-CIO, Appellees,
In re: MARYLAND GLASS CORPORATION, NON-SALARIED EMPLOYEES
PENSION PLAN; Maryland Glass Corporation,
Salaried Employees Pension Plan.
 No. 85-2166.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1986.
Decided March 19, 1987.
 
 D.Md., 618 F.Supp. 1410
 AFFIRMED.
 Appeal from the United States District Court for the District of Maryland, at Baltimore. James R. Miller, Jr., District Judge. (C/A 81-1480)
 Before CHAPMAN and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Stephen D. Schreiber, Trial Attorney, Pension Benefit Guaranty Corporation (James N. Dulcan, Assistant General Counsel; Edward R. Mackiewicz, General Counsel, on brief), for appellant.
 Michael Twomey and Mary Crangle (Olwine, Connelly, Chase, O'Donnell & Weyher; Maura Fecher; Tomar, Seliger, Simonoff, Adourian & O'Brien; Stephen H. Kimatian, on brief), for appellees.
 PER CURIAM:
 
 
 1
 In this action for the involuntary termination of two ERISA qualified pension plans, the district court ordered them terminated retroactively to February 25, 1981. The Pension Benefit Guaranty Corporation has appealed, contending that the district court should have found the plans terminated in September 1980 when the employer failed to make required contributions to the plans.
 
 
 2
 In late October 1978, Dorsey Corporation sold a glass manufacturing plant in Baltimore, Maryland to a corporation which changed its name to Maryland Glass Corporation. The purchaser agreed to continue the two existing ERISA qualified pension plans, but the Pension Benefit Guaranty Corporation was concerned about its exposure to vested claims should underfunding of future contributions to the plans by Maryland Glass develop. Maryland Glass was thinly capitalized, and, under 29 U.S.C. Sec. 1322(a), its contingent liability to PBGC is limited to thirty percent of its net worth. The matter was resolved when Dorsey agreed to indemnify PBGC to the full extent of any underfunding of the plans if the plans were terminated within two years of the sale of the plant to Maryland Glass and to the extent of one-third of any such underfunding if the plans were terminated in the third year following the sale.
 
 
 3
 Maryland Glass encountered financial problems, and in late October 1979 it filed a reorganization petition under Chapter 11 of the Bankruptcy Act. As debtor in possession, it continued operations, however.
 
 
 4
 In September 1980 Maryland Glass failed to make required minimum contributions to the plans and duly notified PBGC. It was experiencing difficulty in meeting even its payroll. Nevertheless, production continued on a somewhat diminishing basis until February 25, 1981. A few salaried employees worked on until April 23, disposing of inventories and performing plant maintenance.
 
 
 5
 On April 24, 1981 the Chapter 11 proceeding was converted into a Chapter 7 liquidation proceeding, and Maryland Glass was subsequently adjudicated bankrupt.
 
 
 6
 In this appeal PBGC contended that the district court should have fixed the date of termination of the plans as of September 1980, when Maryland Glass failed to make the requisite minimum contributions to the plans. That date, of course, was within the two year period of Dorsey's unlimited indemnification agreement. Dorsey contended that the termination date should be February 25, 1981, when operations ceased. The unions representing the employees contended that the termination date should have been April 23, 1981, when the last of the employees was terminated.
 
 
 7
 The district court held the plans terminated as of February 25, 1981. The court was of the view that cessation of operations was constructive notice to all employees of termination of the two plans. In contrast, there was no such constructive notice implicit in the employer's failure to make the contributions due in September 1980. Indeed, at that time there was hope that the plant could be sold or that the financial problems of Maryland Glass could otherwise be resolved and that the plans could be continued.
 
 
 8
 The decision of the district court is embodied in an extensive and comprehensive opinion. Pension Benefit Guaranty Corporation v. Maryland Glass Corporation, et al., 618 F.Supp. 1410 (D.Md. 1985).
 
 
 9
 We affirm for the reasons more than adequately stated by the district court.
 
 
 10
 AFFIRMED.